Catherine Crump
Samuelson Law, Technology and Public Policy Clinic
UC Berkeley School of Law
353 Law Building, Clinical Program
Berkeley, CA 94720-7200
(510) 292-6860
ccrump@clinical.law.berkeley.edu

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITY JUSTICE EXCHANGE, JUST FUTURES LAW, MIJENTE SUPPORT COMMITTEE, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION & CUSTOMS ENFORCEMENT and U.S. DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT** |

## INTRODUCTION

1. Plaintiffs Community Justice Exchange, Just Futures Law, and Mijente Support Committee seek injunctive, declaratory, and other appropriate relief against U.S. Immigration & Customs Enforcement ("ICE") and the U.S. Department of Homeland Security to remedy ICE's violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2. Plaintiffs seek records from ICE related to its use of B.I. Incorporated ("B.I.")'s SmartLINK application as part of the Intensive Supervision Appearance Program ("ISAP"). Plaintiffs specifically requested records regarding the collection of data from the SmartLINK

Complaint for Declaratory and Junctive Relief  1

application; the retention, sharing, and use of such data; and, the nature of monitoring through the application.

3. In 2004, ICE commenced ISAP as a so-called "alternatives to detention" program. Over the last seventeen years, however, this program has only increased the number of immigrants under ICE's supervision, subjecting them to invasive surveillance through voice verification monitoring, ankle shackles, and the SmartLINK application. Consistently, as ICE's budget for ISAP increased, so did its budget for detention, highlighting that this program is not an alternative to detention but instead extends ICE's control over a greater number of people. B.I., a subsidiary of GEO Group, has held the contract for ISAP since 2004. B.I. and GEO Group are heavily invested in mass incarceration across the country and profit every year from surveillance and incarceration through contracts like this one. The constant, invasive surveillance as a part of ISAP has serious impacts on the immigrants who are enrolled in the program. Electronic monitoring can be all-encompassing, knowing that your every move is being monitored. It makes it difficult to obtain and maintain employment, sustain relationships with family members and friends, and causes social isolation.

4. According to ICE's most recently released data, in April 2022 there were 200,332 individuals enrolled in the ISAP program. Of these, 144,051 were on the SmartLINK application—some 72% of all individuals in ISAP.

5. President Biden's FY23 budget request would add $527 million for ICE's Alternative to Detention program and for "continued expansion and reliance" on e-carceration tools. It is projected to grow the number of immigrants subject to electronic monitoring by 200,000 by the end of FY22.

6. From information that is publicly available, it is unclear what data from the SmartLINK application is being collected, retained, used for enforcement operations, and shared with other government agencies.

7. B.I.'s privacy policy for the SmartLINK application allows for extremely broad collection of data. It collects individuals' names, contact information, social security number, A-number, and "other identifying information not publicly available"; "[b]iometric

information such as facial images from photos and voice samples from audio files"; "[g]eolocation data about physical movements and location"; and "App activity and other usage activity such as Internet and similar network activity."

8. B.I's privacy policy for the SmartLINK application allows it to retain data as required "by law or official policy," but does not state what laws or official policies apply or how long it retains data in practice.

9. B.I.'s privacy policy for the SmartLINK application states that it shares information "with third parties in connection with your community supervision," but does not specify with what third parties this sharing occurs. It further states that it will share information "to comply with any court order, law, or legal process, including to respond to any government or regulatory request."

10. According to public reporting, B.I. has encouraged information-sharing between law enforcement agencies. And its app "Total Access" allows B.I. law enforcement clients to share the locations of people they are monitoring and view the information other law enforcement agencies have shared.

11. In February 2022, twenty-five members of Congress (as well as 176 organizations) wrote to Secretary of Homeland Security Alejandro Mayorkas expressing concern over what they described as a drastic increase in ISAP program, highlighting the physical and mental harm their constituents had experienced as a result of the program. The Members of Congress called for ICE to reduce the number of people in ISAP and to publicly disclose its data and civil liberties policy for the SmartLINK application.

12. Electronic monitoring is not an alternative to detention – it is a technological extension. Plaintiffs categorically reject the use of such technologies to monitor immigrant communities and urgently request information on the types of data being collected by SmartLINK, its data sharing, retention, and use policies, and the nature of monitoring through the application.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter pursuant to FOIA, 5 U.S.C. § 552(a)(4)(B), and as a federal question under 28 U.S.C. § 1331.

14. Venue in the Northern District of California is proper under 5 U.S.C. § 552(a)(4)(B) because Plaintiff Community Justice Exchange has its principal place of business in this district. For the same reason, venue is also proper under 28 U.S.C. § 1391(e).

15. Pursuant to Local Rule 3-2(c) and (d), assignment to the San Francisco Division is proper because Plaintiff Community Justice Exchange is headquartered in San Francisco.

## PARTIES

16. Plaintiff Community Justice Exchange ("CJE"), a not-for-profit project of the San Francisco-based Tides Center, a California non-profit corporation, develops, shares and experiments with tactical interventions, strategic organizing practices, and innovative organizing tools to end all forms of criminalization, incarceration, surveillance, supervision, and detention. CJE provides support to community-based organizations across the country that are experimenting with bottom-up interventions that contest the current operation and function of the criminal legal and immigration detention systems.

17. Plaintiff Just Futures Law ("JFL"), a non-for-profit corporation established under the laws of Delaware, is an immigration lawyering organization that provides legal support for grassroots organizations engaged in making critical interventions in the United States' deportation and detention systems and policies. JFL maintains close relationships with organizations and activists who seek to understand and educate the public about the scope and range of government surveillance and criminalization. JFL staff have decades of experience in providing expert legal advice, legal resources, and training for immigration attorneys and criminal defense attorneys on the immigration consequences of the criminal legal system, including publishing a report, together with co-Plaintiff Mijente, about the expansion of ICE's alternatives to detention program.

18. Plaintiff Mijente Support Committee ("MSC"), a not-for-profit corporation established under the laws of Arizona, is a national organization that coordinates and organizes

Complaint for Declaratory and Junctive Relief 4

with its members in several states to address issues relating to immigration enforcement and Latinx political participation. Founded by community organizers, its focus is on developing and sparking social change with respect to immigration and other social justice issues within the Latinx community and beyond. It published a report, together with co-Plaintiff JFL, about the expansion of ICE's alternatives to detention program.

19. Defendant U.S. Immigration and Customs Enforcement ("ICE") is a component of DHS and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

20. Defendant Department of Homeland Security is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## FACTS

21. On September 14, 2021, Just Futures Law, Mijente Support Committee, and Community Justice Exchange sent a Freedom of Information Act request to the U.S. Immigration and Customs Enforcement via email regarding "Records Related to Immigration & Customs Enforcement (ICE)s Use of B.I. Incorporated's SmartLINK Application for the Intensive Supervision Appearance Program (ISAP)."

22. The request sought the following records:

1. Records indicating the types of data collected by the agency through the SmartLINK application. Types of data may include, but are not limited to, location data, video footage, voice recording, biometric data, information about the mobile network, and/or any other data about the mobile device or its uses.

2. Records indicating the types of data collected by the application while installed on an individual's device, with or without the knowledge and/or consent of the individual who is being monitored as a part of ISAP.

3. Records indicating the length of time for which these types of data are collected by the SmartLINK application, including but not limited to information about which types of data collection are constant when the application is installed on an individual's device.

4. Records on the retention and sharing of any data collected by the SmartLINK application, including but not limited to:
   a. B.I.'s access to any data collected by the SmartLINK application, the length of time the data is retained by B.I., and any processes for deletion of this data from B.I.'s records. This includes data collected at, retained in, and used by C sites, G sites, the central monitoring facility, and any other B.I.-operated facility or database.
   b. ICE officers' access to any data collected by the SmartLINK application, the length of time the data is retained by ICE, and any processes for deletion of this data from ICE's records. *Note:* according to the ISAP IV contract, B.I. is required to provide ICE access to a "remotely accessible database" and "monitoring system". This request includes data collected at, retained in, shared and used by G sites, T sites, S sites, the central monitoring facility, and any ICE-operated facility or database.
   c. All ICE components and offices which have access to the data and the extent to which this data is accessible to individuals in these components and offices.
   d. Any guidance, instruction, manual, and/or contract describing ICE officers' use of B.I. Total Access.
5. All other DHS components which have access to the data and the extent to which this data is accessible to individuals in these components and offices.
6. All other federal and/or local government agencies which have access to the data and the extent to which this data is accessible to individuals in any other federal and/or local government agencies.
7. Any policy, procedure, release, and/or form relating to processes for sharing information collected through the SmartLINK application with any of the components, offices, and/or agencies mentioned above.

8. Any policy, procedure, release, and/or form relating to the process for sharing and/or selling information collected through SmartLINK with any other entity, public or private.
9. Records describing the operations of the "central monitoring facility," as mentioned in ICE's Statement of Work for the ISAP IV contract, including but not limited to:
    a. The division of responsibilities in management of the central monitoring facility between ICE employees and B.I. employees.
    b. The process through which alert reports are generated by the central monitoring facility and then sent to ICE field offices.
    c. The number of requests per month that ICE retroactively requests data generated from the SmartLINK application.
    d. Any breakdown of the types of data requested through these retroactive requests.
    e. Any breakdown by ICE field office of these retroactive requests.
    f. Any policy, procedure, release, and/or form outlining guidelines for requesting information from SmartLINK retroactively.
10. Records regarding all enforcement operations that used data collected from the SmartLINK application, including but not limited to:
    a. The types of data used in these enforcement operations.
    b. Breakdown by ICE field office of enforcement operations that relied on any data from SmartLINK.
    c. The sharing of data with other DHS components and offices or government agencies as listed above for the explicit purpose of enforcement operations.
    d. Any policy, procedure, release, and/or form relating to obtaining this data for the purposes of enforcement operations.

11. Records indicating the accuracy of the SmartLINK application features, including but not limited to:
    a. The accuracy of the facial recognition feature in the SmartLINK application and the number of false positives and false negatives as a part of the facial recognition check in process.
    b. Breakdown by race, gender, and/or age on the accuracy of the facial recognition feature and the number of false positives and false negatives as a part of the facial recognition check in process.
    c. The accuracy of location tracking in the SmartLINK application and the number of noted errors as a result of the application in location verification.
    d. Any audits or other records that describe validation, accuracy, or reliability.
12. Any policy, procedure, release, or/and form relating to obtaining the consent of individuals to collect or use their data through the SmartLINK application, whether as a part of the orientation process or at any other time.
13. Any policy, procedure, or/and form relating to providing notice to individuals on the collection, use, and/or sharing of their data in instances beyond when they are explicitly aware that their data is being collected, used, and/or shared.

20. The Request also included an application for a fee waiver or limitation under 5 U.S.C. § 552(a)(4)(A)(ii)(II) & (a)(4)(A)(iii).

21. ICE received the request on September 14, 2021.

22. As of the filing date of this Complaint, more than 20 days have passed since the filing of the FOIA request, and ICE and DHS have not responded to the request.

23. An agency's failure to comply with any timing requirements is deemed constructive denial and satisfies the requester's requirement to exhaust administrative remedies. *Id.* § 552(a)(6)(C)(i)

**VIOLATION OF FOIA FOR FAILURE TO PROVIDE A DETERMINATION WITHIN 20 DAYS**

24. Plaintiffs repeat, reallege, and incorporate by reference the allegations in all preceding paragraphs.

25. Defendants have failed to provide a determination within 20 days (excluding Saturdays, Sundays, and legal public holidays) after receipt of the request regarding whether it will comply with the request, in violation of 5 U.S.C. § 552(a)(6)(A)(i).

**VIOLATION OF FOIA FOR FAILURE TO MAKE RECORDS AVAILABLE**

26. Plaintiffs repeat, reallege, and incorporate by reference the allegations in all preceding paragraphs.

27. Defendants have failed to make available the records sought by the request, in violation of 5 U.S.C. § 552(a)(3)(A).

**WHEREFORE**, Plaintiffs request that the Court award them the following relief:

1. Declare that Defendants violated FOIA by failing to determine whether to comply with the request within 20 business days;

2. Declare that Defendants violated FOIA by unlawfully withholding the requested records;

3. Order Defendants to immediately disclose the requested records to the public and make copies immediately available to Plaintiffs without charge for any search or duplication fees;

4. Award Plaintiffs their reasonable costs and attorneys' fees; and

5. Grant such other Relief as the Court may deem just and proper.

Dated: April 14, 2022        Respectfully Submitted

*Catherine Crump.*
Catherine Crump
Samuelson Law, Technology and Public Policy Clinic
UC Berkeley School of Law
353 Law Building, Clinical Program
Berkeley, CA 94720-7200

Complaint for Declaratory and Junctive Relief        9

(510) 292-6860
ccrump@clinical.law.berkeley.edu